# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

SEP 0 9 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One black Samsung Cell Phone Galaxy A20<br>Model: SM-A205U<br>IMEI No: 355720100629603 | )<br>)<br>)<br>)<br>)<br>) |

Case No.

**'19MJ10667**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2, incorporated by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See attached affidavit of United States Border Patrol Agent Miguel Flores.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Miguel Flores, United States Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___9/9/19___

_____
*Judge's signature*

City and state: __El Centro, California__

Ruth B. Montenegro, United States Magistrate Judge
*Printed name and title*

# **ATTACHMENT A-2**

One black Samsung Cell Phone Galaxy A20
Model:  SM-A205U
IMEI No:  355720100629603
(**Target Telephone 2)**

**Target Telephone 2** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-1

One black Samsung Cell Phone Galaxy A20
Model: SM-A205U
IMEI No: 355720100546005
**(Target Telephone 1)**

**Target Telephone 1** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEM TO BE SEIZED

Authorization to search the **Target Telephones** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephones** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 22, 2019 through August 22, 2019:

a.  tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d.  tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the target phone(s); or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, § 1324.**

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Miguel Flores, United States Border Patrol Agent ("BPA"), United States Border Patrol ("USBP"), after being duly sworn, state:

### INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant to search the following target property, as further described in Attachments A-1 and Attachment A-2 (collectively referred to herein as the **Target Telephones**), and seize evidence of violations of federal law, namely 8 U.S.C. § 1324, as further described in Attachment B:

> One black Samsung Cell Phone Galaxy A20
> Model: SM-A205U
> IMEI No: 355720100546005
> (**Target Telephone 1**, described in Attachment A-1)

> One black Samsung Cell Phone Galaxy A20
> Model: SM-A205U
> IMEI No: 355720100629603
> (**Target Telephone 2**, described in Attachment A-2)

This search supports an investigation and prosecution of Jessica FELIX ("J. FELIX") and Michael Anthony FELIX ("M. FELIX") for the offense above.   A factual explanation supporting probable cause follows.

2.      The **Target Telephones** were seized on August 21, 2019, at the time that J. FELIX and M. FELIX were arrested for transporting illegal aliens, in violation of 8 U.S.C. § 1324. **Target Telephone 1**, as described in Attachment A-1 (incorporated herein by reference), was seized from the purse that J. FELIX was wearing, and **Target Telephone 2**, as described in Attachment A-2 (incorporated herein by reference), was seized from the right front pocket of M. FELIX. The **Target Telephones** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    I seek authority to search the **Target Telephones** for, and to seize evidence of, crimes, specifically, the transportation of illegal aliens in violation of 8 U.S.C. § 1324, as described in Attachment B (incorporated herein by reference), for the time period June 22, 2019 through August 22, 2019.

4.    Based on the information below, there is probable cause to believe **Target Telephone 1** was used by J. FELIX, and **Target Telephone 2** by M. FELIX, to communicate with co-conspirators during an alien smuggling event, which occurred in the Southern District of California, and that both devices contain evidence relating to violations of 8 U.S.C. § 1324.

5.    Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Rather, it contains only those facts that are necessary to establish probable cause for the requested warrant. Dates and times are approximate.

### EXPERIENCE AND TRAINING

5.    I am a BPA with USBP within the Department of Homeland Security. I have been a BPA since December 4, 2006. I am a graduate of the USBP Training Academy in Artesia, New Mexico. As a result of my training and experience as a BPA, I am familiar with federal criminal and immigration laws. My primary duties have been the enforcement of federal immigration laws. As part of this training, I attended criminal investigation training that included course studies in, among other things, criminal law, constitutional law, searches and seizures, and courtroom procedure.

6.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. The El Centro Sector Prosecutions Unit is also tasked with investigating narcotics smuggling and bulk cash smuggling as it relates to the presentation of these cases in federal jurisdictions.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Conspiracies involving alien smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail and text messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

8.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9.     Based upon my training and experience as a USBP Agent, and consultations with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a.     Alien smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.     Alien smugglers will use cellular telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

c.     Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

d.   Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

e.   Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

f.   Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

g.   The use of cellular telephones by alien smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to, emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10.   Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that device.

11.   Additionally, based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience investigating these conspiracies, I have learned that searches of cellular/mobile telephones and/or other mobile communication devices yields evidence:

4

a.    tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b.    tending to identify other facilities, storage devices, or services– such as    email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d.    tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the target phone(s); or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12.    On August 21, 2019, BPA H. Perez was performing primary inspection at the Highway 86 Border Patrol Checkpoint near Westmorland, California. At approximately 1:20 p.m., while conducting primary inspection, a silver Ford Explorer approached BPA Perez' location for inspection. BPA Perez observed the driver gripping the steering wheel with both hands and looking forward with no intentions of stopping for inspection. BPA Perez held out his left hand and signaled the driver to stop. The driver, later identified as J. FELIX, stopped and lowered her driver's side window. BPA Perez identified himself as a BPA and asked J. FELIX to state her citizenship. J. FELIX stated "U.S." BPA Perez then asked the passenger in the front seat, later identified as M. FELIX, to state his citizenship. M. FELIX replied "U.S."

5

1  M. FELIX appeared to be nervous because his lip was twitching when he answered
2  BPA Perez's question and he could not stay still in his seat.

3     13.  BPA Perez identified himself in the Spanish language to the other five
4  occupants inside the vehicle and stated this was an immigration inspection.  Three
5  passengers were sitting in the middle row and two were sitting in the rear row.  All five
6  passengers would not make eye contact with BPA Perez and none of them responded
7  to his question.  J. FELIX and M. FELIX both answered that all the passengers were all
8  United States citizens and that they were all family.  BPA Perez stated to J. FELIX and
9  M. FELIX not to answer for them and J. FELIX started asking BPA Perez, "What is the
10 problem?"  At that moment, BPA Perez instructed J. FELIX to park in secondary
11 inspection area so that an immigration inspection could be done on the rest of the
12 passengers.  M. FELIX became aggressive and stated that they were not going to park
13 in secondary inspection and that they were going to leave.  BPA Perez placed a tire
14 deflation device in front of the Explorer and advised them that if they moved, their tires
15 would be deflated.  BPA Perez ordered J. FELIX and M. FELIX to exit the vehicle and
16 they both refused.  J. FELIX stated that BPA Perez was violating her rights because she
17 had already stated her citizenship.  BPA Perez explained to her that he wasn't satisfied
18 with his immigration inspection of her passengers.  At that moment, BPA Perez asked
19 J. FELIX to unlock the car and exit the vehicle and she still refused.

20    14.  While BPA Perez was dealing with J. FELIX, he could hear the other BPAs
21 assigned to the checkpoint dealing with M. FELIX, and he heard him being
22 uncooperative.  BPA Perez stated to J. FELIX that she could exit the vehicle of her own
23 free will or she would be physically removed if she didn't cooperate.  J. FELIX again
24 stated that she was not exiting the vehicle.  At that moment, BPA Perez reached through
25 the window to try and unlock her door and she started to roll up her window on his arm.
26 BPA Perez pulled his arm out of the window and he heard BPA Meza state that one of
27 the passengers admitted he was in the United States illegally.  At that moment, BPA
28 Hynes opened the door to physically remove M. FELIX and BPA Perez observed that

6

M. FELIX was resisting BPA Hynes. BPA Perez ran over to the passenger's side to assist BPA Hynes with the arrest of M. FELIX. BPA R. Avitia placed J. FELIX under arrest while BPA Perez was assisting BPA Hynes with M. FELIX. At this time, all the remaining occupants of the vehicle were placed under arrest.

15.    While escorting J. FELIX into the checkpoint, BPA Avitia noticed that J. FELIX was wearing a black purse across her chest. BPA Avitia asked J. FELIX if she had any weapons or knives on her person. J. FELIX stated she had a handgun in her purse. BPA Avitia conducted a search of the purse and discovered **Target Telephone 1** and a loaded black 9 millimeter hand gun with a round in the chamber. Thereafter, BPA J. Rosa showed J. FELIX **Target Telephone 1** and asked if it belonged to her; J. FELIX replied, "Yes." The items were placed into a property bag and inventoried under FP&F seizure number 2019255100043101

16.    BPA Hynes retrieved the **Target Telephone 2** from M. FELIX'S right front pocket and placed it on the concrete barrier across from primary inspection. After securing M. FELIX into a holding cell, BPA Hynes went back outside and retrieved the items. BPA Hynes then brought the items into the checkpoint and placed them together on top of the processing counter. The items were placed into a property bag and inventoried under FP&F seizure number 2019255100043101.

17.    The five occupants in the second and third rows of the Explorer were later identified as William AGUIRRE-Rodriguez, Joel CALDOZA-Sanchez, Oliverio PEREZ-Cardoza, Misael RAMIREZ-Martinez, and Margarito TALAVERA-Morales (collectively, "Material Witnesses"). Each of the Material Witnesses stated that they were citizens of Mexico with no immigration documents allowing them to be in the United States legally, and that were paying between $6,000 and $9,500 to be smuggled into the United States.

18.    Finally, based on my training and experience, I know that alien-smuggling conspiracies generally entail planning that includes efforts to evade detection by law enforcement. In my professional training and experience, I am aware alien-smuggling

1  requires planning and coordination in the days and weeks prior to the relevant
2  smuggling event. Additionally, I am aware that co-conspirators are often unaware of a
3  subject's arrest and will continue to attempt to communicate with the subject after the
4  arrest to determine the whereabouts of their valuable cargo, particularly in the hours
5  following the arrest. Therefore, I believe that the appropriate date range for the search
6  of the **Target Devices** is from June 22, 2019 up to and including August 22, 2019 (*i.e.*,
7  the day after the events described in this affidavit).

8                                          **METHODOLOGY**

9        19.    It is not possible to determine, merely by knowing the cellular telephone's
10  make, model and serial number, the nature and types of services to which the device is
11  subscribed and the nature of the data stored on the device. Cellular devices today can
12  be simple cellular telephones and text message devices, can include cameras, can serve
13  as personal digital assistants and have functions such as calendars and full address books
14  and can be mini-computers allowing for electronic mail services, web services and
15  rudimentary word processing. An increasing number of cellular service providers now
16  allow for their subscribers to access their device over the internet and remotely destroy
17  all of the data contained on the device. For that reason, the device may only be powered
18  in a secure environment or, if possible, started in "flight mode" which disables access
19  to the network. Unlike typical computers, many cellular telephones do not have hard
20  drives or hard drive equivalents and store information in volatile memory within the
21  device or in memory cards inserted into the device. Current technology provides some
22  solutions for acquiring some of the data stored in some cellular telephone models using
23  forensic hardware and software. Even if some of the stored information on the device
24  may be acquired forensically, not all of the data subject to seizure may be so acquired.
25  For devices that are not subject to forensic data acquisition or that have potentially
26  relevant data stored that is not subject to such acquisition, the examiner must inspect
27  the device manually and record the process and the results using digital photography.
28  This process is time and labor intensive and may take weeks or longer.

20.   Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis.  All forensic analysis of the data contained within the telephone and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21.   Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months.   The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this Court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22.   Law enforcement has not yet attempted to obtain the evidence sought by this warrant.

## CONCLUSION

23.   Based on all of the facts and circumstances described above, there is probable cause to conclude that J. FELIX used **Target Telephone 1** and M. FELIX used **Target Telephone 2** to facilitate the transportation of illegal aliens in violation of 8 U.S.C. § 1324, and that evidence of that illegal activity committed by J. FELIX, M. FELIX, and other co-conspirators continues to exists on the **Target Telephones**.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1    24.    WHEREFORE, I request that the court issue warrants authorizing law

2  enforcement agents and/or other federal and state law enforcement officers to search

3  the items described in Attachments A-1 and A-2, and seize the items listed in

4  Attachment B, using the methodology described above.

5        I swear the foregoing is true and correct to the best of my knowledge and belief.

6

7                                          _____

8                                          MIGUEL FLORES
                                           U.S. Border Patrol Agent

9

10

11  Subscribed and sworn to before me this ____ day of September, 2019.

12

13  _____

14  Honorable Ruth Bermudez Montenegro
    United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28